USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 10 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

UNITED STATES OF AMERICA : Criminal No. 19 CRIM 349

v. : Filed:

BANCA IMI SECURITIES CORP., : Violation: 15 U.S.C. § 1

Defendant. :

----------------------------------------------------------- x

## INFORMATION

The United States of America, acting through its attorneys, charges:

### SHERMAN ACT CONSPIRACY
(15 U.S.C. § 1)

### DEFENDANT AND CO-CONSPIRATORS

At all relevant times, unless otherwise specified:

1. Banca IMI Securities Corp. ("Defendant") is a U.S. broker-dealer organized and existing under the laws of Delaware with its headquarters in New York, New York.

2. Various corporations and individuals, not made defendants in this Information, participated as co-conspirators to commit the offense charged in this Information and performed acts and made statements in furtherance of it.

3. Whenever in this Information reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of that corporation's business.

1

## BACKGROUND

4. Worldwide, there are thousands of publicly traded companies that list their shares of common stock only on foreign stock exchanges, not in the United States. Most U.S. investors are unable to purchase or sell such foreign shares, which also are known as "ordinary" shares. However, the U.S. Securities and Exchange Commission permits four U.S. depository banks to create financial instruments, known as "American Depository Receipts" or "ADRs," which each represent one or more foreign ordinary shares and can be traded in the United States on U.S. stock exchanges or over the counter. Through the purchase and sale of ADRs, U.S. investors are able to gain exposure to—including the ability to receive dividends from—companies whose ordinary shares are listed only on foreign exchanges.

5. In order to create an ADR in the United States, the depository bank is required to ensure that the corresponding ordinary share(s) are taken out of circulation in the foreign country. That process is known as "custodying" the ordinary shares. Subject to certain regulatory requirements, U.S. depository banks are permitted to release ADRs a short time before the foreign ordinary shares are custodied—ADRs sold or lent by U.S. depository banks in that circumstance are known as "pre-release ADRs."

6. During the Relevant Period (defined in Paragraph 8, below), U.S. broker-dealers were able to borrow pre-release ADRs from U.S. depository banks and then lend them on to investment banks, hedge funds, or other financial institutions. Such broker-dealers were known as "conduit brokers" because they served as a conduit between the

U.S. depository bank and the rest of the institutions involved. Depository banks set the rates they charged to lend pre-release ADRs based on bids they received from conduit brokers.

7.  During the Relevant Period, Defendant acted as a conduit broker of pre-release ADRs.

## DESCRIPTION OF THE OFFENSE: STATUTORY ALLEGATION

8.  From at least as early as March 2012 and continuing until at least August 2014 ("Relevant Period"), the exact dates being unknown to the United States, in the Southern District of New York and elsewhere, Defendant and its co-conspirators knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by rigging their bids to U.S. depository banks for the rates they would pay to borrow pre-release ADRs. The combination and conspiracy engaged in by Defendant and its co-conspirators was a per se unlawful, and thus unreasonable, restraint of trade and commerce among the states and with foreign nations in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

9.  The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and its co-conspirators, the substantial terms of which were to rig bids for the rates at which they all could borrow pre-release ADRs from U.S. depository banks.

10. Defendant and its co-conspirators took actions, including those described in Paragraph 11, in furtherance of this conspiracy in the Southern District of New York and elsewhere.

## MEANS AND METHODS OF THE CONSPIRACY

11. For the purpose of forming and carrying out the charged combination and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

   (a) attended meetings or otherwise communicated, including via telephone, email, and text messaging platforms, regarding bids to be submitted to U.S. depository banks to borrow pre-release ADRs;

   (b) agreed during those meetings and other communications to suppress and eliminate competition by rigging bids to borrow pre-release ADRs from U.S. depository banks, including by agreeing as to the bids Defendant and one or more other conduit brokers would submit to U.S. depository banks for the rates they would pay to borrow pre-release ADRs;

   (c) borrowed, in the United States, pre-release ADRs from U.S. depository banks at collusive and noncompetitive rates; and

   (d) paid collusive and noncompetitive rates to borrow pre-release ADRs from U.S. depository banks.

## **TRADE AND COMMERCE**

12. During the Relevant Period, the business activities of Defendant and its co-conspirators that are the subject of this Information were within the flow of, and substantially affected, trade and commerce among the several states and with foreign nations. Defendant and its co-conspirators borrowed and lent substantial quantities of pre-release ADRs, with counterparties located in New York, other states, and foreign countries, in a continuous and uninterrupted flow of trade and commerce among the several states and with foreign nations. Defendant and its co-conspirators also caused substantial collateral transfers for pre-release ADR transactions to travel in trade and commerce among the several states and with foreign nations.

**ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.**

Dated: 4/3/19

_____
MAKAN DELRAHIM
Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____
RICHARD A. POWERS
Deputy Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
JAMES J. FREDRICKS
Chief, Washington Criminal II
Antitrust Division
U.S. Department of Justice

_____
MARK C. GRUNDVIG
Assistant Chief, Washington Criminal II
Antitrust Division
U.S. Department of Justice

_____
DANIEL MCCUAIG
CHRISTINA J. BROWN
KATHERINE H. STELLA
SOMADINNA I. NWOKOLO
Trial Attorneys, Washington Criminal II
Antitrust Division
U.S. Department of Justice
450 5th Street NW, Suite 11-300
Washington, DC 20001
202-307-0520